*Electronically Filed*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE DIVISION
CIVIL ACTION NO.  7:22-cv-00007-REW-EBA**

| | |
|---|---|
| **SABRINA ADKINS** ) | |
| ) | |
| **AND** ) | |
| ) | |
| **JENNIFER HILL** ) | |
| ) | |
|      **PLAINTIFFS** ) | |
| ) | |
| **V.** ) | |
| ) | |
| **BEN FIELDS, Individually** ) | |
| **And in his Official capacity as** ) | |
| **a Deputy Sheriff with the** ) | **FIRST AMENDED** |
| **Letcher County Sheriff's Department** ) | **COMPLAINT** |
| ) | |
| **UNKNOWN SUPERVISORS** ) | |
| **OF BEN FIELDS** ) | |
| ) | |
| **AND** ) | |
| ) | |
| **MICKEY STINES, LETCHER COUNTY** ) | |
| **SHERIFF** ) | |
| ) | |
|      **DEFENDANTS** ) | |

Comes the Plaintiffs, Sabrina Adkins ("Sabrina") and Jennifer Hill ("Jennifer")

(together "Plaintiffs"), by and through counsel, and for their First Amended Complaint

against the Defendants, states as follows:

## INTRODUCTION

This is a civil action for damages for violation of the Constitutional rights of Plaintiffs by the Defendants, acting under color of state law.  In addition, the Plaintiffs alleges that the Defendant Ben Fields ("Defendant Fields") is liable under state law.

Plaintiffs assert that the Defendant Fields, in his individual and official capacities, violated Plaintiff's rights secured by the Fourth and Fourteenth Amendments to the United States Constitution by subjecting Plaintiffs to arbitrary action, unreasonable search and seizure, and deprivation of liberty.  The Plaintiffs also alleges that Defendant Fields is liable under state law for damages for false imprisonment, assault and battery, malicious prosecution, intentional infliction of emotional distress, negligence, and gross negligence. Defendant Fields' unknown supervisors and Defendant Letcher County Sheriff Stines are alleged to be liable to Plaintiffs for deliberate indifference in failing to adequately train and supervise Defendant Fields.

## JURISDICTION AND VENUE

This Court has original jurisdiction over this action pursuant to 28 U.S.C. §1331, actionable by virtue of 42 U.S.C. §1983.  In addition, the Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

Venue is appropriate in this Court pursuant to 28 U.S.C §1391.

## PARTIES

1.  Sabrina is a resident of Pike County, Kentucky.

2.  Jennifer is a resident of Perry County, Kentucky.

3.  Defendant Fields was at all times relevant to this Complaint acting as a Letcher County Deputy Sheriff. Defendant Fields is sued in his official capacity on the declaratory relief and damages claims, and in his individual capacity as to all claims

2

set forth herein. Upon information and belief Defendant Fields is a resident of Letcher County, Kentucky.

4. At all times relevant hereto, Defendant Fields was acting under color of state law in performing the acts or omissions complained of in this Complaint.

5. Defendant Mickey Stines is the duly elected Letcher County Sheriff, elected pursuant to the Kentucky Constitution, Section 99, and regulated by KRS Chapter 70.

## FACTUAL ALLEGATIONS RELATED TO SABRINA

All preceding Paragraphs are incorporated herein by reference thereto, as if fully set out herein.

1. Sabrina was arrested in Letcher County, Kentucky in April 2021.

2. From April 2021 through June 2, 2021, Sabrina was incarcerated at the Letcher County Jail.

3. In early June 2021 Sabrina was released from the Letcher County Jail and placed on home incarceration.

4. Defendant Fields, a deputy sheriff with the Letcher County Sheriff's Department, was assigned to be Sabrina's home incarceration officer.

5. After she was released, Sabrina had a difficult time finding housing accommodations in Letcher County.

6. Defendant Fields was aware of Sabrina's housing issues, as well as Sabrina's domestic issues.

7. Defendant Fields visited Sabrina in the evening the night she was released from the Letcher County Jail to bring her cigarettes, and to console her.

8. At this time Sabrina notified Defendant Fields that she did not have the money to pay

for her ankle bracelet, but she was terrified to return to the Letcher County Jail.

9. Defendant Fields made flirtatious comments about Sabrina's looks and body and told her that he was confident that they could "work something out."

10. Sabrina understood these communications to mean that she would receive favorable treatment from Defendant Fields if she provided him with sexual favors.

11. Thereafter, Sabrina and Defendant Fields communicated on a regular basis by text messages.

12. In late June 2021 Defendant Fields asked Sabrina to meet her at the Letcher County Courthouse in the evening after dark.

13. Defendant Fields took Sabrina into District Judge Mullins' chambers, telling Sabrina that he wanted to meet her there because there were no cameras.

14. At this time Defendant Fields took off Sabrina's ankle monitor and told her that she would not have to pay the associated fees any longer but could remain out on home incarceration.

15. Between late June and December 2021 Defendant Fields met Sabrina at the Letcher County Courthouse in the evening or early morning hours approximately six (6) times.

16. During these meetings Defendant Fields' behavior escalated from flirtatious comments to forcible kissing, to oral sex, to intercourse with Sabrina, all of which occurred at the Letcher County Courthouse after hours, in Judge Mullins' Chambers (hereinafter the "sexual abuse").

17. Sabrina was coerced and compelled to comply with Defendant Fields' advances given Defendant Fields' position of power, and because she could not afford to pay for the

ankle monitor and did not want to return to the Letcher County Jail.

18. Sabrina did not consent to the sexual abuse.

19. These meeting would typically occur the night before Sabrina had a court appearance, and Defendant Fields would put Sarina's ankle monitor back on and otherwise fix it so that she would appear compliant with her home incarceration the following day.

20. Upon information and belief, in December 2021 certain persons at the Letcher County Courthouse were notified that Defendant Fields was having inappropriate communications and/or relations with Sabrina and were provided text messages evidencing the inappropriate communications and relations.

21. Upon information and belief Defendant Fields became aware of the information contained in the preceding paragraph.

22. In late December, 2021 Defendant Fields stopped communicating with Sabrina by text message or otherwise.

23. Upon information and belief, in early January 2022 Defendant Fields filed a complaint against Sabrina claiming that she was not complying with the terms of her home incarceration.

24. Upon information and belief this complaint was filed maliciously by Defendant Fields, in an effort to punish Sabrina and in an attempt to save his own job and reputation.

25. Sabrina was arrested on January 26, 2022, in Pike County, Kentucky.

26. Sabrina was terrified that she would be transferred to the Letcher County Jail where upon information and belief Defendant Fields' wife is employed as an officer, and where upon information and belief Defendant Fields was previously employed.

27. Sabrina had and continues to have serious concerns for her safety and welfare if she were to be transferred to the Letcher County Jail.

28. As a direct and proximate result of the Defendants' actions Sabrina has suffered and continues to suffer emotional distress, pain and suffering, and mental anguish.

## FACTUAL BACKGROUND RELATED TO JENNIFER

29. Jennifer was arrested in Letcher County in 2019 and incarcerated at the Letcher County Jail.

30. The Letcher County Jail is housed below the Letcher County Courthouse in the same building.

31. In approximately August, 2020 Jennifer was put on home incarceration and to be supervised by Defendant Fields.

32. When Jennifer was first notified that she would be let out on home incarceration Defendant Fields took Jennifer to a small room in the Letcher County Jail to put her ankle monitor on.

33. At this time Defendant Fields told Jennifer that if she could not afford to pay the home incarceration fees, they could 'work something out.'

34. When Jennifer asked Defendant Fields for clarification, he told her that if Jennifer would do him a 'favor,' he would do her a 'favor.'

35. Jennifer understood Defendant Fields to be asking for sex in exchange for waiver of home incarceration fees.

36. Jennifer told him no, and that she was not interested.

37. Defendant Fields had previously gone to Jennifer's home to install a box which at that time was necessary for home incarceration and further verified that the home was

6

satisfactory and otherwise complied with home incarceration requirements.

38. Three days later Defendant Fields showed up at Jennifer's home and arrested her purportedly because her home was not properly maintained for home incarceration.

39. This was pretext, and upon information and belief Jennifer arrested because she refused to comply with Defendant Fields' requests for sex.

40. Jennifer was finally released from custody sometime later that same year.

41. On or about August 17, 2021 Jennifer was again arrested in Letcher County, and soon thereafter she was bonded out of jail on the condition that she comply with home incarceration.

42. Defendant Fields came to the Letcher County Jail to put an ankle monitor on Jennifer.

43. Within a few days Defendant Fields showed up at Jennifer's home with Sheriff Mickey Stines, other law enforcement officers, and an ambulance and claimed that they were responding to a report that Jennifer had overdosed.

44. This was false, and Jennifer was in the process of unloading groceries from the car when these individuals arrived.

45. Upon information and belief, this report and visit was orchestrated by Defendant Fields in an attempt to intimidate and harass Jennifer.

46. Defendant Fields stayed at Jennifer's home after all other law enforcement and emergency service persons left and threatened to take Jennifer in for a drug screen in a further attempt to intimidate and harass Jennifer.

47. The next day Defendant Fields returned to Jennifer's house and parked his Letcher County Sheriff's Department vehicle behind her house where it was hidden from passersby.

48. Defendant Fields knocked on Jennifer's door and instructed Jennifer that if she did not do as he said, he would put her back in jail.

49. Defendant Fields told Jennifer that if she made him happy, he would make her happy. He further told her that if he was not happy neither one of them would be happy.

50. Jennifer understood him to mean that if she did not do as he instructed, he would make sure she ended back up in jail as he had done the prior year.

51. Defendant Fields then commanded Jennifer to come outside, and get into the front seat of his vehicle, which she did.

52. Defendant Fields then got into the front seat of the vehicle also and told Jennifer that he wanted oral sex.

53. Jennifer involuntarily complied with Defendant Fields' instruction.

54. Thereafter Defendant Fields offered to pay Jennifer's home incarceration fees.

55. Jennifer's fiancé assisted her these payments, and she did not want him to find out about her interactions with Defendant Fields so she said no.

56. Defendant Fields then notified Jennifer that he would be back in a couple days and left.

57. Jennifer told a friend and roommate about what occurred but did not tell her fiancé about Defendant Fields at this time.

58. Approximately three days later Defendant Fields returned to Jennifer's home, and in a similar fashion instructed her to have sexual intercourse with him in the backseat of the Letcher County Sheriff's Department vehicle he was driving.

59. Jennifer involuntarily complied with Defendant Fields' instruction.

60. Defendant Fields again told Jennifer that if she kept him happy, he would keep her

happy, and told her not to tell anyone about what had occurred.

61. There were two additional times in the weeks and months that followed when Defendant Fields similarly came to Jennifer's home and instructed her to have sexual intercourse with him in the backseat of his Letcher County Sheriff's Department vehicle.

62. Jennifer involuntarily complied with his instruction on these occasions also.

63. Jennifer told her roommate and a friend about these additional instances of sexual abuse on or about the dates they occurred.

64. Each time Defendant Fields came to Jennifer's house for sex he was wearing his Letcher County Sheriff's Department uniform, driving his Letcher County Sheriff's Department vehicle.

65. Each time Defendant Fields came to Jennifer's house for sex he reminded her that she needed to keep him happy, and that he could have her arrested and put in jail where he would make her life miserable.

66. Jennifer was coerced and compelled to comply with Defendant Fields' instructions given Defendant Fields' position of power over her.

67. Jennifer did not consent to this sexual abuse.

68. On or about October 2021 Defendant Fields came to Jennifer's home and demanded sex. Jennifer told Defendant Fields that she could not have sex with him, telling him that her fiancé was on his way home.

69. On this same occasion she asked Defendant Fields if she could go visit her newborn granddaughter in London, Kentucky. Defendant Fields agreed and removed Jennifer's ankle monitor so she could make this trip.

70. Upon information and belief Defendant Fields then reported that Jennifer had violated a condition of her bond and she was arrested.

71. At the time she was arrested Jennifer's belonging, including her cell phone, where confiscated.

72. Jennifer remained incarcerated in the Letcher County Jail from late October, 2021 through December 17, 2021.

73. Within the first couple days after her arrest, in the presence of Deputy Sheriff Whitaker, Defendant Fields told Jennifer to 'remember what I told you' and 'keep your mouth shut.'

74. On approximately three (3) occasions Defendant Fields and his wife Angie Fields who worked at the Letcher County Jail removed Jennifer from her cell in an attempt to gain information regarding other inmates.

75. Upon information and belief the actions described in the two preceding paragraphs were done to harass and intimidate Jennifer.

76. In December 2021 Jennifer was released from the Letcher County Jail on the condition that she participate in drug court.

77. When Jennifer was leaving the Letcher County Jail all of her belongings were returned to her except her cell phone which had mysteriously disappeared.

78. Upon information and belief Defendant Fields or persons working on his behalf took Jennifer's cell phone because there were incriminating communications between Jennifer and Defendant Fields on her phone.

79. Upon information and belief Defendant Fields' sister Holly works for the Letcher County Drug Court program.

80. After being released, and in the presence of Jennifer's fiancé, Defendant Fields notified Jennifer that his sister Holly had just notified Defendant Fields that Jennifer would soon be arrested due to a warrant from another county.

81. During this same conversation Defendant Fields told Jennifer that she needed to run to avoid arrest, and she did.

82. On December 17, 2021, a warrant was issued for Jennifer's arrest, for a purported drug court violation.

83. On or about February 4, 2022, Jennifer was arrested and since this time has been held in Perry County, Kentucky at the Kentucky River Regional Jail on a drug court violation.

84. Jennifer is terrified that she will be returned to the Letcher County Jail, where upon information and belief Defendant Fields' wife remains employed.

85. As a direct and proximate result of the Defendants' actions Jennifer has suffered and continues to suffer emotional distress, pain and suffering, and mental anguish.

## ADDITONAL FACTUAL BACKGROUND RELATED
## TO THE LETCHER COUNTY SHERIFF'S DEPARTMENT

86. Upon information and belief, in December 2021 Defendant Fields as well as numerous other persons who work at the Letcher County Jail, Letcher County Courthouse, and the Letcher County Sheriff's Department were aware that Sabrina had made allegations against Defendant Fields as described above.

87. Upon information and belief a complaint was made by a friend of Sabrina Adkins to persons working in the Letcher County Drug Court program about sexual harassment and abuse by Defendant Fields against Sabrina.

88. Upon information and belief the complainant either provided copies of inappropriate text messages between Defendant Fields and Sabrina or notified such persons that text messages existed.

89. Upon information and belief Defendant Fields and other Letcher County Deputy Sheriffs were aware of these allegations related to Sabrina in early December, 2021.

90. Upon information and belief Sheriff Stines knew or should have known about these allegations related to Sabrina on or before early December, 2021.

91. Upon information and belief these allegations were not appropriately investigated by Sheriff Stines.

92. In early December, 2021 Jennifer's fiancé called the Letcher County Sheriff's Department to complain about Defendant Fields.

93. During this call Jennifer's fiancé spoke to a female Letcher County Sheriff's Deputy and notified her that Defendant Fields had been sexually harassing Jennifer.

94. This female Letcher County Sheriff's Deputy hung up on Jennifer's fiancé.

95. On December 15, 2021 Jennifer's fiancé went to the Letcher County Sheriff's Department in person, to make a complaint against Defendant Fields.

96. Jennifer's Fiancé spoke to Letcher County Deputy Sheriff Whitaker, who told him that the complaint would be investigated and he needed to keep quiet about this while it was investigated.

97. Very soon after leaving the Sheriff's Department, Jennifer's Fiancé was pulled over in his vehicle by Letcher County Deputy Sheriff Norris, who was accompanied by a female deputy.

98. Deputy Norris asked Jennifer's Fiancé 'what the f**k he thought he was doing,' and

told him that he needed to keep his 'f**ing nose out of the Sheriff Department's business.'

99. Later this same day, Jennifer's Fiancé was pulled over again by a man who refused to identify himself by name, who was driving a red Silverado pickup truck, wore a badge, and was carrying a gun.

100.   This individual identified himself as being "from the Sheriff's Department," and told Jennifer's Fiancé that he had 'stuck his nose where it don't belong' and called him a liar.

101.   This individual also told Jennifer's Fiancé that Defendant Fields was involved with people who are 'high up on the ladder,' who he should not 'mess with.'

102.   This individual further threatened Jennifer's Fiancé and his family and told him to forget about his complaint about Defendant Fields.

103.   During the time that this individual was detaining and threatening Jennifer's Fiancé, he was speaking to other unknown persons on his cell phone and on a radio in his truck.

104.   Upon information and belief this individual was speaking to other persons employed by the Letcher County Sheriff's Department.

105.   A couple hours later Jennifer's Fiancé was stopped for a third time by another Letcher County Sheriff's Deputy driving his official vehicle.

106.   This Deputy notified Jennifer's Fiancé that there had been a lot of "chatter" about Defendant Fields and his complaint that day.

107.   This Deputy then told Jennifer's Fiancé that they didn't need any trouble like this in the Letcher County Sheriff's Department because they were all barely getting paid

as it was.

108.    This Deputy was also speaking to someone on his cellphone and radio during the

exchange.

109.    Upon information and belief, the above-mentioned communications to Jennifer's

Fiancé were aimed at intimidating, harassing, and silencing Jennifer.

110.    Upon information and belief the Letcher County Sheriff's Department failed to

reasonably investigate the allegations related to Jennifer.

111.    Upon information and belief, the Letcher County Sheriff, and unknown

supervisors of Defendant Fields, failed to adequately train and supervise Defendant

Fields and other Letcher County Sheriff's Department employees.

112.    Upon information and belief, the Letcher County Sheriff knew or should have

known that Defendant Fields was sexually abusing females, including Plaintiffs, in

his charge.

113.    Upon information and belief other persons employed by the Letcher County

Sheriff's Department have harassed and intimated persons associated with Sabrina

and Jennifer in an attempt to discourage other women from coming forward and to

disparage Sabrina and Jennifer.

114.    Upon information and belief, the Letcher County Sheriff did not timely or

reasonably respond to reports or suspicions of sexual abuse perpetrated by Defendant

Fields.

115.    The Defendants' conduct described above has caused severe injury to Plaintiffs,

for which they are entitled to recover actual damages in an amount to be determined

at trial.

## COUNT I

### (Defendant Fields Violated Plaintiffs' Rights
### Secured By United States Constitution, Amendments IV)

All preceding Paragraphs are incorporated herein by reference thereto, as if fully set out herein.

116.    Defendant Fields knowingly and recklessly engaged in the above-described sexual abuse of Plaintiffs, and such physical contact was objectively unreasonable.

117.    Defendant Fields' sexual abuse of Plaintiffs was not rationally related to any legitimate governmental purpose and was otherwise excessive.

118.    Plaintiffs did not consent to the physical contact with Defendant Fields.

119.    Plaintiffs was coerced by Defendant Fields, and to the extent they complied with Defendant Fields' physical contact they did so only because they were intimidated by Defendant Fields who provided Plaintiffs with privileges in exchange for sexual favors.

120.    The above-described actions of Defendant Fields constitute a violation of Plaintiffs' right to be free from unreasonable search and seizure, secured by United States Constitution Amendments IV, which is actionable pursuant to 42 U.S.C. § 1983.

121.    Plaintiffs are entitled to recover compensatory damages against the Defendant Fields in an amount sufficient to fully compensate them for the damages they suffered as a result of these Constitutional violation.

122.    Defendant Fields willfully, wantonly, recklessly, and maliciously engaged in the unconstitutional conduct described above.

123.    Plaintiffs are entitled to recover punitive damages against Defendant Fields in an

15

amount sufficient to punish said Defendant Fields, as well as deter him and others similarly situated from committing such violations in the future.

## COUNT II

### (Defendant Fields Violated Plaintiffs' Rights
### Secured By United States Constitution, Amendments XIV)

All preceding Paragraphs are incorporated herein by reference thereto, as if fully set out herein.

124.    Plaintiffs had a fundamental right to personal security and bodily integrity extending specifically to the right to be free from sexual abuse.

125.    Defendant Fields sexually abused Plaintiffs in violation of this fundamental right.

126.    Defendant Fields' conduct was so oppressive that it shocks the conscious.

127.    Defendant Fields' conduct was intended to injure Plaintiffs in a way unjustifiable by any government interest.

128.    The above-described actions of Defendant Fields constitute a violation of Plaintiffs' substantive due process rights, secured by United States Constitution Amendments IV, which is actionable pursuant to 42 U.S.C. § 1983.

129.    Plaintiffs are entitled to recover compensatory damages against the Defendant Fields in an amount sufficient to fully compensate them for the damages they suffered as a result of this Constitutional violation.

130.    The Defendant Fields willfully, wantonly, recklessly, and maliciously engaged in the unconstitutional conduct described above.

131.    Plaintiffs are entitled to recover punitive damages against Defendant Fields in an amount sufficient to punish said Defendant Fields, as well as deter him and others similarly situated from committing such violations in the future.

## COUNT III

### (Deliberate Indifference/ Failure to Supervise and Train Actionable Pursuant To 42 U.S.C. § 1983 against Letcher County Sheriff and Unknown Supervisors of Defendant Fields)

All preceding Paragraphs are incorporated herein by reference thereto, as if fully set out herein.

132.   Defendant Fields was inadequately trained in the areas of proper supervision and interaction with female criminal defendants on home incarceration.

133.   The Defendants Letcher County Sheriff and unknown supervisors of Defendant Fields (together the "Letcher County Sheriff's Department") knew or should have known that Defendant Fields was abusing his power and taking advantage of females on home incarceration under his control and supervision.

134.   The inadequate training of home incarceration officers employed by the Letcher County Sheriff's Department is likely to result in the ongoing violation of constitutional rights.

135.   The Letcher County Sheriff's Department policymakers have been deliberately indifferent to this need for adequate training.

136.   The Letcher County Sheriff's Department's Failure to adequately train, supervise, or discipline their employees proximately caused the violation of Plaintiffs' constitutional rights.

137.   The Letcher County Sheriff's Department substantially caused a constitutional tort to Plaintiffs through its customs, policy statements, ordinances, regulations, and decisions officially adopted and promulgated by that body's officers.

138.   The acts and omissions of the Letcher County Sheriff's Department, in failing to

adequately train and supervise Defendant Fields, as set forth in this Complaint, amount to deliberate indifference to the Constitutional rights of Plaintiffs and a complete disregard for the known and obvious consequences of such indifference; all of which resulted in the Constitutional violations and tortious conduct described in this Complaint, and are therefore actionable pursuant to 42 U.S.C. § 1983.

139.   Plaintiffs are entitled to recover compensatory damages against Defendant Letcher County Sheriff's Department in an amount sufficient to fully compensate Plaintiffs for the damages they suffered as a result of the conduct set forth herein.

140.   Defendant Letcher County Sheriff's Department acted willfully, wantonly, recklessly, and maliciously engaged in the conduct set forth herein.

141.   Plaintiffs are entitled to recover punitive damages against Defendant Letcher County Sheriff Department.

142.   Defendant Letcher County Sheriff's Department in an amount sufficient to punish said Defendant for the conduct set forth herein, as well as deter said Defendant and others similarly situated from engaging in such conduct in the future.

## COUNT IV

### (Negligence, Gross Negligence, Assault and Battery against Defendant Fields)

All preceding Paragraphs are incorporated herein by reference thereto, as if fully set out herein.

143.   The above-described actions of Defendant Fields were negligent, grossly negligent, and constitute assault and battery.

144.   Defendant Fields had a duty to reasonably supervise Plaintiffs while they were on home incarceration.

145.   Defendant Fields violated the duty he had to the Plaintiffs.

146.   Defendant Fields's violation of the duty of care he owed to Plaintiffs directly and proximately caused the Plaintiffs damages.

147.   Plaintiffs are entitled to recover compensatory damages against Defendant Fields in an amount sufficient to fully compensate them for the damages they suffered as a result of the tortious conduct of Defendant Fields.

148.   Defendant Fields willfully, wantonly, recklessly, and maliciously engaged in the tortious conduct.

149.   Plaintiffs are entitled to recover punitive damages against the Defendant Fields in an amount sufficient to punish him for the tortious conduct, as well as deter him and others similarly situated from engaging in such conduct in the future.

## COUNT V

### (Grossly Negligent Infliction Of Emotional Distress)

All preceding Paragraphs are incorporated herein by reference thereto, as if fully set out herein.

150.   As a direct and proximate result of the above-described grossly negligent conduct of Defendant Fields, Plaintiffs suffered and continue to suffer severe emotional distress.

151.   Plaintiffs are entitled to recover compensatory damages from Defendant Fields in an amount sufficient to fully compensate them for the damages they suffered as a result of the tortious conduct.

152.   Because the conduct of Defendant Fields was grossly negligent, Plaintiffs are entitled to recover punitive damages against Defendant Fields in an amount sufficient

19

to punish him for the tortious conduct, as well as deter him and others similarly situated from engaging in such conduct in the future.

## COUNT VI

### (Intentional Infliction Of Emotional Distress)

All preceding Paragraphs are incorporated herein by reference thereto, as if fully set.

153.   The above-described actions of Defendant Fields were intentional and are outrageous and offend generally accepted community standards of decency and morality.

154.   As a direct and proximate result of the above-described actions of Defendant Fields, Plaintiffs suffered and continue to suffer severe emotional distress.

155.   Plaintiffs are entitled to recover compensatory damages against Defendant Fields in an amount sufficient to fully compensate them for the damages they suffered as a result of the tortious and wrongful conduct.

156.   Defendant Fields willfully, wantonly, recklessly and maliciously engaged in the tortious conduct above described.

157.   Plaintiffs are entitled to recover punitive damages against Defendant Fields in an amount sufficient to punish him for his malicious and intentional tortious conduct, as well as deter Defendant Fields and others similarly situated from engaging in such conduct in the future.


**WHEREFORE**, the Plaintiffs respectfully demands the following relief:

A.   An award of compensatory damages against the Defendants in an amount sufficient to compensate Plaintiffs for damages they suffered as a result of the Federal

Constitutional violations described herein;

B.      An award of compensatory damages against Defendants, in an amount sufficient to compensate Plaintiffs for damages they suffered as a result of the above-described bases for liability arising under state law;

C.      An award of punitive damages against Defendants, in an amount sufficient to punish the Defendants and deter them, as well as others similarly situated, from engaging in unlawful and unconstitutional conduct in the future;

D.      An award of Plaintiffs' costs incurred in prosecuting this action, including reasonable attorneys' fees and any expert fees pursuant to 42 U.S.C. § 1988;

E.      An award of any and all other relief to which Plaintiffs may appear entitled, and

F.      The Plaintiffs respectfully demands a trial by jury on all Counts so triable.

Respectfully submitted,

/s/ Bethany N. Baxter
JOE F. CHILDERS
BETHANY N. BAXTER

CHILDERS & BAXTER, PLLC
The Lexington Building
201 West Short Street
Suite 300
Lexington, Kentucky 40507
Telephone: (859) 253-9824
Facsimile: (859) 259-1909
joe@jchilderslaw.com
bethany@jchilderslaw.com

NED PILLERSDORF
PILLERSDORF LAW OFFICES
124 West Court Street

Prestonsburg, Kentucky 41653
Telephone: (606) 886-6090

## **VERIFICATION**

I have read the foregoing factual allegations related to my claims and they are true

and correct to the best of my knowledge and belief.

JENNIFER HILL, PLAINTIFF