UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT PIKEVILLE

*Electronically filed*

| | |
|---|---|
| SABRINA ADKINS, *et al.* | |
| *Plaintiffs* | |
| v. | No. 7:22-cv-00007-REW-EBA |
| BEN FIELDS, individually and in his official capacity as a Deputy Sheriff with the Letcher County Sheriff's Department, *et al.* | |
| *Defendants* | |

## MOTION TO QUASH SUBPOENA

Russell Coleman, Attorney General of the Commonwealth of Kentucky, moves the Court, under Federal Rule of Civil Procedure 45(d)(3), to quash the subpoena to produce documents, which was served upon him by the Plaintiffs in this action on June 25, 2024. As grounds for this motion, Attorney General Coleman states that the subpoena requires the disclosure of privileged or other protected matter and subjects him and his Office to an undue burden. In support of this motion, Attorney General Coleman states as follows:

### INTRODUCTION

The Attorney General's Office of Special Prosecutions ("OSP") prosecuted a criminal action on behalf of the Commonwealth of Kentucky against Defendant Ben

1

Fields in the Letcher Circuit Court. *See Commonwealth v. Fields*, No. 22-CR-00216 (Letcher Cir. Ct.). Following a mediated agreement, Fields entered pleas of guilty to one count of rape in the third degree (Ky. Rev. Stat. § 510.060), one count of sodomy in the third degree (Ky. Rev. Stat. § 510.090), two counts of tampering with a prisoner monitoring device (Ky. Rev. Stat. § 519.070), and one count of perjury in the second degree (Ky. Rev. Stat. § 523.030). In its final judgment entered January 17, 2024, the Letcher Circuit Court sentenced Fields to a total of seven years' imprisonment.[1]

During the litigation of the underlying criminal case, the Commonwealth, through OSP, produced discovery to Fields and his counsel, as required by Ky. R. Crim. P. 7.24. In this action, the Plaintiffs have issued a subpoena to Attorney General Coleman, seeking copies of those discovery materials from the prosecutors' file. (Ex. 1.[2]) Specifically, the Plaintiffs have demanded production of "[u]nredacted documents produced by the Commonwealth, represented by AG's Office of Special Prosecutions, in Letcher Circuit case no. 22-CR-00216. . . ." (*Id.* at 1.)[3] To further identify the documents they seek, the Plaintiffs attached as an exhibit to their

---

[1] The trial court's judgment ordered Fields to serve six months of his sentence but probated the remaining six and a half years of prison time for a period of five years.

[2] A copy of the subpoena to produce documents, which the Office of the Kentucky Attorney General received on June 25, 2024, is attached hereto as Exhibit 1.

[3] Pursuant to the Kentucky Open Records Act, Ky. Rev. Stat. §§ 61.870 to 61.884, the Office of the Kentucky Attorney General ("OAG") has already produced approximately 25,000 pages of documents to Plaintiffs' counsel, in response to a request for "copies of the investigative file regarding Ben Fields, Letcher Circuit Action No. 22-CR-216, to specifically include the investigative file of Det. Matt Easter [of the] Department of Criminal Investigations [("DCI")]." As allowed by the Open Records Act, Ky. Rev. Stat. § 61.878(1)(a), in producing the documents, OAG redacted certain information of a personal nature from the DCI file, including photos of the victims which may reveal their identity; photos of places or items that may identify the victims; names and nicknames of the victims; personal telephone numbers, email addresses, physical addresses, social security numbers, and dates of birth; and driver license numbers, license plate numbers, VIN numbers, financial account information, and passwords. No documents have been produced to Plaintiffs' counsel from OSP.

2

subpoena the "Commonwealth's Discovery Inventory" filed by OSP in Fields's criminal case. (*Id.* at 4–5.)[4]

The parties have jointly represented to the Court that they "need[ ] unredacted files from the Kentucky Attorney General's office to complete discovery" and that "obtaining these documents before the depositions of the Defendants is necessary." (Doc. 103, Joint Mot. for Ext. of Time, at 2, Page ID# 540.) But, for the reasons discussed more fully below, the Court should quash the Plaintiffs' subpoena.

## ARGUMENT

### I. The federal doctrine of sovereign immunity precludes the Plaintiffs' subpoena.

The Eleventh Amendment provides that "one of the United States," such as the Commonwealth of Kentucky, cannot be sued in federal court by "Citizens of another State." U.S. Const. amend. XI. Though the Eleventh Amendment may appear on its face to apply only to the Court's diversity jurisdiction, the courts have read it more broadly to "confirm[ ]" the two-part "presupposition" that, first, "each State is a sovereign entity in our federal system," and second, "it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent." *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 54 (1996) (cleaned up). "[F]ederal jurisdiction over suits against unconsenting States was not contemplated by the

---

[4] In discovery in Fields's criminal case, OSP did redact some information from the documents before producing them to Fields (mostly Social Security numbers of witnesses), though the redactions were much less significant than those made to the DCI documents produced by OAG under the Open Records Act. By stating in the subpoena that they seek the "documents produced by the Commonwealth" in the criminal case, the Attorney General construes their request to mean they seek the lightly redacted documents, as they were produced in discovery.

3

Constitution when establishing the judicial power of the United States." *Id.* (quotation omitted).

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). And suits against state officials are treated as suits against the State itself. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). Most suits against a State are barred by the federal doctrine of sovereign immunity. *See Will*, 491 U.S. at 66. And sovereign immunity bars suits against state officials "regardless of whether it seeks damages or injunctive relief." *EMW Women's Surgical Ctr., P.S.C. v. Beshear*, 920 F.3d 421, 444–45 (6th Cir. 2019) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984)).

Thus, if a judicial proceeding in federal court is a "suit" against a state official, it is barred by the State's sovereign immunity under the federal doctrine of sovereign immunity. Attorney General Coleman is a state official, elected directly by the people of the Commonwealth of Kentucky. Ky. Const. § 91. Thus, the question is whether the Plaintiffs' subpoena to Attorney General Coleman is a "suit" for sovereign immunity purposes. It is.

The Supreme Court has held that a judicial proceeding is a suit against the sovereign for immunity purposes if "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration," or if "the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Dugan v. Rank*, 372 U.S. 609, 620 (1963). Other federal courts have read

4

*Dugan* broadly, holding that its rule does not require the government to be a defendant for it to apply. *See, e.g., EPA v. Gen. Elec. Co.*, 197 F.3d 592, 597 (2d Cir. 1999) (looking to the "result" of a judicial proceeding and holding that "the enforcement of this *subpoena duces tecum* issued by General Electric to the EPA would compel the EPA to act and therefore is barred by sovereign immunity").

More recently, the Fifth Circuit applied the same rule to a State as a separate sovereign, holding that a court could not enforce a subpoena to state court judges on account of the State's sovereign immunity. In *Russell v. Jones*, 49 F.4th 507 (5th Cir. 2022), the Fifth Circuit reasoned:

> [S]overeign immunity is an immunity from *suit* (including discovery), not just liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Where sovereign immunity applies, it applies totally. Plaintiffs stop at the Rule 12(b)(1) stage and don't get discovery. They don't pass go. Indeed, plaintiffs originally sued the Felony Judges directly. But when this court held . . . that county district-court judges receive sovereign immunity and do not lose it under *Ex parte Young*, plaintiffs hit a roadblock. No longer able to seek discovery from the Felony Judges as defendants (or no longer willing to try), plaintiffs dismissed the Felony Judges and sought the documents by third-party subpoena instead. Unfortunately, however, sovereign immunity is not so fickle. *Plaintiffs may not obtain by third-party subpoena what they could not obtain from the Felony Judges as defendants.*

*Russell*, 49 F.4th at 514–15 (emphasis added). In holding that a subpoena to state officials "subjects a sovereign to the 'coercive process of judicial tribunals at the instance of private parties,'" *id*. at 515 (quoting *Seminole Tribe of Fla.*, 517 U.S. at 58), and is therefore a "suit" for sovereign immunity purposes, the Fifth Circuit noted, "When haled into court on pain of contempt and forced to produce its papers (and litigate about whether it has to), it is no succor to the sovereign that it is not named in the complaint." *Id*. at 515–16.

5

There does not appear to be any precedent in the Sixth Circuit addressing whether a subpoena to produce documents is a "suit" for sovereign immunity purposes. But *Russell* has been cited as persuasive authority outside the Fifth Circuit to quash a *subpoena duces tecum* to the New York State Office of the Attorney General that sought documents related to its investigation and prosecution of a criminal case. *Felix v. County of Nassau*, 344 F.R.D. 441 (E.D.N.Y. 2023); *see also Bennett v. Cuomo*, No. 22 Civ. 7846 (VSB) (SLC), 2024 WL 2963714 (S.D.N.Y. June 12, 2024). And the same rule that applies to the Federal Government, as in *EPA*, 197 F.3d at 597, should be applied to a State, such as Kentucky, and its officials, like Attorney General Coleman. The Court should therefore quash the Plaintiffs' subpoena to Attorney General Coleman, as barred by Kentucky's sovereign immunity under the federal doctrine.

## II. Sovereign immunity under Kentucky law precludes the Plaintiffs' subpoena.

"When a case involves state (rather than federal) claims, Kentucky courts may grant broader sovereign-immunity protections to state officials than those officials would receive under the U.S. Constitution. And a federal court sitting in diversity must respect these state immunities." *New Albany Main St. Props. v. Watco Cos., LLC*, 75 F.4th 615, 623 (6th Cir. 2023) (citations omitted). In this action, in addition to several claims under 42 U.S.C. § 1983 (*see* Doc. 57, Plfs. 2d Am. Compl., Counts I–III, at 16–19, Page ID# 351–54), the Plaintiffs also have pled state law claims against the Defendants for negligence, gross negligence, assault, battery, negligent infliction of emotional distress, intentional infliction of emotional distress, and negligent

6

retention, training, and retention (*see id.*, Counts IV–VII, at 19–23, Page ID# 354–58). Thus, the Court should also evaluate whether sovereign immunity under Kentucky law also precludes the Plaintiffs' subpoena to Attorney General Coleman.[5]

Under Kentucky law, sovereign immunity is an inherent attribute of the Commonwealth's sovereignty, which precludes the maintaining of any suit against the Commonwealth unless the Commonwealth has given its consent or otherwise waived its immunity. *Yanero v. Davis*, 65 S.W.3d 510, 517 (Ky. 2001) (citing *Reyes v. Hardin Cnty.*, 55 S.W.3d 337, 338 (Ky. 2001)). Sovereign immunity is "absolute" in Kentucky. *Id.* at 518. "The absolute immunity from suit afforded to the state also extends to public officials sued in their representative (official) capacities." *Id.* "Official immunity [is] absolute . . . when an officer or employee of the state is sued in his/her representative capacity, in which event his/her actions are included under the umbrella of sovereign immunity." *Id.* at 521.

The Attorney General is a constitutional officer for the Commonwealth at large. Ky. Const. § 91. He is directly elected by the people of the Commonwealth, *id.*, not appointed by the Governor or any other civil authority. Clearly, the Attorney General is a state officer.[6] Attorney General Coleman thus shares in the Commonwealth's sovereign immunity.

Analysis of the question here under state law is therefore the same as the analysis under the federal doctrine of sovereign immunity. Because Attorney General

---

[5] Because this case is in federal court, the federal doctrine of sovereign immunity also applies to the state law claims. *See New Albany Main St. Props.*, 75 F.4th at 618–19.

[6] The heading for Sections 69 to 96 of the Kentucky Constitution states that those sections concern "Officers for the State at Large."

Coleman is afforded absolute sovereign immunity, he is not subject to a "suit" related to his Office's prosecution of Fields. For the same reasons that the federal doctrine precludes the Plaintiffs' subpoena to the Attorney General, the Commonwealth's sovereign immunity under state law also precludes the Plaintiffs' subpoena.[7]

### III. The secrecy of grand jury proceedings precludes the Plaintiffs' subpoena, in part.

Finally, the Plaintiffs' subpoena seeks production of "Letcher County Grand Jury proceedings of September 29, 2022." (Ex. 1, at 4.) By this, the Plaintiffs are referring to the transcript or audio recording of OSP's presentation of Fields's case to the grand jury made under Ky. R. Crim. P. 5.16(1). However, both federal and Kentucky law prioritize the secrecy of grand jury proceedings. The Court should preclude the intrusion into the secrecy of grand jury proceedings posed by the Plaintiffs' subpoena.

With exceptions not relevant here, in Kentucky "all persons present during any part of the proceedings of a grand jury shall keep its proceedings and the testimony given before it secret." Ky. R. Crim. P. 5.24(1). The secrecy of grand jury proceedings

---

[7] The Attorney General is aware of two non-final cases in the Kentucky state courts that have held that *governmental* immunity does not bar a subpoena to a Commonwealth's Attorney's office. *See Commonwealth v. Elmore*, No. 2023-CA-0845-MR, 2024 WL 3210220 (Ky. App. June 28, 2024); *Commonwealth v. Riley*, No. 2021-CA-1115-MR, 2022 WL 12129821 (Ky. App. Oct. 21, 2022), *disc. rev. granted*, 2022-SC-0505 (Ky.). Because these cases are not yet final, the Kentucky Court of Appeals decisions have no precedential value. And, because both *Elmore* and *Riley* were state court cases, there was no sovereign immunity issue under the federal doctrine raised in either. Again, because this federal-court case raises both federal and state law claims, both the federal doctrine and the state doctrine apply—the federal to all the claims and the state one to the state law claims. *See New Albany Main St. Props.*, 75 F.4th at 618–19. So, to the extent the issues in *Elmore* and *Riley* are similar to the issues presented in this motion, those cases are distinguishable.

8

is an "ancient" rule in Kentucky. *See Bazzell v. Ill. Cent. R. Co.*, 262 S.W. 966, 967 (Ky. 1924).

> From earliest times it has been the policy of the law in furtherance of justice to shield the proceedings of grand juries from public scrutiny. Secrecy is for the protection of the witnesses and the good names of innocent persons investigated but not indicted and is to inspire the grand jurors with a confidence of secrecy in the discharge of their duties.

*Greenwell v. Commonwealth*, 317 S.W.2d 859, 861 (Ky. 1958); *see Democratic Party of Ky. v. Graham*, 976 S.W.2d 423, 427 (Ky. 1998) (recognizing the "requirement that grand jury proceedings remain secret"). Though Rule 5.24(1) of the Kentucky Rules of Criminal Procedure does recognize "the authority of the court at any time to direct otherwise," the grand jury's secrecy should only be set aside in exceptional circumstances, such as "in a prosecution for false swearing or to contradict a witness on the trial of the defendant." *Greenwell*, 317 S.W.2d at 861. Thus, invading the secrecy of the grand jury is a serious matter, and cannot be done lightly or cavalierly.

The U.S. Supreme Court also has identified several important reasons for grand jury secrecy:

> (1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

*United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 n.6 (1958) (citing *United States v. Rose*, 215 F.2d 617, 628–29 (3d Cir. 1954)). Thus, parties seeking recordings

9

of grand jury proceedings "must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 222 (1979).

Moreover, the Court has held that "disclosure is appropriate only in those cases where the need for it outweighs the public interest in secrecy, and . . . the burden of demonstrating this balance rests upon the private party seeking disclosure." *Id.* at 223. As the Court explained, "[I]n considering the effects of disclosure on grand jury proceedings, the courts must consider not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries. Persons called upon to testify will consider the likelihood that their testimony may one day be disclosed to outside parties. Fear of future retribution or social stigma may act as powerful deterrents to those who would come forward and aid the grand jury in the performance of its duties." *Id.* at 222. Accordingly, a court must carefully weigh "the competing interests in light of the relevant circumstances." *Id.* at 223. Only where there is a "compelling necessity" that is shown with "particularity," may the secrecy of grand jury proceedings be broken. *Procter & Gamble*, 356 U.S. at 682 (citations omitted).

These considerations prevent enforcement of the Plaintiff's subpoena here.

First, the Plaintiffs have not filed a motion under Ky. R. Crim. P. 5.24(1), asking the state court to "direct otherwise." And so, the Court should not permit the Plaintiffs' subpoena to pierce the secrecy of the grand jury's proceedings.

More importantly, the Plaintiffs cannot carry their burden of showing there is a compelling necessity for piercing the secrecy of the grand jury proceedings in Fields's criminal case. The Plaintiffs' subpoena is not tailored to the exigencies of this case. The grand jury testimony sought is not "structured to cover only material [that is] needed" to "avoid a possible injustice" here, nor does the subpoena itself explain how "the need for disclosure is greater than the need for continued secrecy" of the grand jury's proceedings. *Douglas*, 441 U.S. at 222. There is no "compelling necessity" to pierce the secrecy of grand jury proceedings here, *Procter & Gamble*, 356 U.S. at 682, and so, at a minimum, the Court should quash the Plaintiffs' subpoena to the extent it seeks to pierce the secrecy of the grand jury.

## CONCLUSION

The Plaintiffs have other effective avenues for obtaining the information they seek from Attorney General Coleman, all of which previously was disclosed to Fields in discovery in his criminal case. For example, the Plaintiffs can obtain the documents described in the subpoena directly from Fields (*e.g.*, by serving a request for production under Fed. R. Civ. P. 34). They can obtain the requested documents and information from Fields's criminal defense counsel (*e.g.*, by subpoena to the attorney). Or, because much of the information redacted from the 25,000 pages of the DCI investigative file produced to Plaintiffs' counsel under the Kentucky Open Records Act concerns the Plaintiffs, the Plaintiffs themselves can give depositions and confirm

the information redacted from the DCI investigative file. None of these methods would involve an entanglement with public administration or require an official of the Commonwealth of Kentucky to submit to compulsory judicial process at the insistence of private litigants. Each of these methods of discovering the information the Plaintiffs seek could be as effective as, and avoid the federalism concerns raised by, the Plaintiffs' subpoena. The Court should therefore quash the Plaintiffs' subpoena, and order the parties to avail themselves of these alternative methods of obtaining the information they seek.

Respectfully submitted,

/s/ Aaron J. Silletto
Aaron J. Silletto (KBA# 89305)
Office of the Attorney General
700 Capital Avenue, Suite 118
Frankfort, Kentucky 40601
Phone: (502) 696-5300
aaron.silletto@ky.gov

*Counsel for Attorney General
Russell Coleman*

## CERTIFICATE OF SERVICE

I certify that on July 5, 2024, the above document was filed with the CM/ECF filing system, which electronically served a copy to all counsel of record.

/s/ Aaron J. Silletto
*Counsel for Attorney General
Russell Coleman*