UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT PIKEVILLE
CIVIL ACTION NO. 7:22-CV-00007-REW-EBA

| | |
|---|---|
| SABRINA ADKINS and<br>JENNIFER HILL | PLAINTIFFS |
| -vs- | |
| BEN FIELDS, Individually and in his<br>Official capacity as a Deputy Sheriff with the<br>Letcher County Sheriff's Department;<br>EASTERN KENTUCKY CORRECTIONS<br>SERVICES INC.; and BILLY JONES,<br>LETCHER COUNTY SHERIFF | DEFENDANTS |

## MOTION FOR RECONSIDERATION

Come now Defendants, BILLY JONES, Letcher County Sheriff and BEN FIELDS, in his official capacity as a Deputy Sheriff with the Letcher County Sheriff's Department, by and through counsel, and moves the Court for reconsideration of that part of the Court's September 19, 2025 Opinion and Order (R. 165) which denied summary judgment in part as to Plaintiff's claims against them. In support, Defendants state:

Motions to reconsider are evaluated under the same standard as a motion to alter or amend a judgment under Rule 59(e). *Howard v. Magoffin Co. Bd. Of Educ.*, 830 F. Supp. 2d 308, 319 (E.D. Ky. 2012) (citing *Keith v. Bobby*, 618 F.3d 594, 597–98 (6th Cir. 2010)). To succeed, the moving party must show one of the following: "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Id.* (quoting *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010)). However, "[a] motion under Rule 59(e) is not an opportunity to re-argue a case." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998).

1

The Court acknowledges at page 1 of the opinion and order that Defendant Fields is a former "*certified court security officer*". Certified court security officers are not classified as "*law enforcement officers*" under state law. KRS 15.310 defines **"*court security officers*"** separately from "*law enforcement officers*" and "*peace officers*." *See* Exhibit 1, KRS 15.310. Certified court security officers are required to complete specific training and certification under KRS 15.3975, but their role is distinct from that of "*law enforcement officers*" (*who are subjected to more rigorous trainings such as those cited at pages 32-33 of the Court's opinion*). Court Security Officers are primarily tasked with court security duties. *See i.e.* KRS 70.280. As addressed in Defendant's reply, Kentucky is one of the states that mandate state accreditation for law enforcement agencies and officers. R. 143, p.2. Fields was an academy trained certified court security officer.

Under KRS 15.330(1) it is the Kentucky Law Enforcement Council (KLEC) who approves officers as having met the requirements for completion of law enforcement training. Ongoing training updates (in-service trainings) are mandatory, and LCSO employees are provided with professional training that is certified and recognized by KLEC. These training courses and in-service trainings are provided through the Department of Criminal Justice Training (DOCJT) and Court Security Officers have to attend at least 40 hours of training every (2) years (biannually). Ben Fields met these standards until he was terminated. *See* R. 143-4, Frazier Affidavit, ¶ 7; *See also* R. 143-5, 503 KAR 1:190 - Certified Court Security Officers training academy; R. 143-21, transcript and R. 143-23, former DOCJT Commander Payne Affidavit. As a part of the academy training, Fields was trained in ethical standards of conduct. *Id.*. There is no additional training required by law.

Ben Fields also served as a certified deputy jailer for a decade and testified that he knew his actions were wrong. By way of example, training standards for deputy jailers lie not with the local government, but at the state level. *See i.e.* Poynter v. Whitley Cnty. Det. Ctr., 722 F. Supp. 3d 745, 758 (E.D. Ky. 2024) (*the Fiscal Court has no oversight over the training standards for county jails; that authority belongs to the Department of Corrections*). Here, it is the Kentucky Law Enforcement Council who maintains oversight over training standards.

**At page 27** the Court addresses the secondary employment policy. As addressed in Defendants reply, the Kentucky Supreme Court has held that regulations requiring police officers wishing to engage in outside employment to obtain prior written approval from a chief of police was invalid as granting an arbitrary power. *See* Puckett v. Miller, 821 S.W.2d 791, 795 (Ky 1991). R. 143, Reply, p. 8, ID# 2028. *See i.e.* OAG 77-347. Although Fields was a certified court security officer, KRS 61.310(4) allows police officers, while in office, and during hours other than regular or scheduled duty hours, to act in *any* private employment as guard or watchman or in any other similar or private employment. *See i.e.* OAG 77-347 "*KRS 61.310 clearly authorizes a peace officer to obtain private employment provided such employment does not interfere with the performance of his duties*". See also Clark County Attorney v. Thompson, 617 S.W.3d 427,436-437 (Ky. 2021).

**At page 28, Stines was not included nor even asked about the "crude" and "sexist" messaging attached at R. 139-6.** Regarding allegations of "a toxic work environment" discussed **at page 28**, the message chain that Stines was shown and testified about is the series of messaging contained at R. 139-7, Page ID# 1850-1873. It was some of these messages identified in Stines deposition that were referred as setting "*a horrible example*" – most of which were work related. Mickey Stines was ***not*** included nor was he even asked during his deposition

3

about the "crude" and "sexist" messages between Eckles and Fields from Fields criminal production attached at R. 139-6, Page ID#1818-1849.

**At page 29** Court discusses a bespoke complaint process. However, as explained by Lashawna Frazier:

> "If written complaints were received, they would be placed in the Officer's personnel file along with whatever reprimand was received, if the situation called for reprimand. If a citizen had a complaint the complaint could be taken in writing or verbally. Mickey would talk to each of complainants to discuss the situation and determine / investigate if the officer needed to be reprimanded. **It is rare** to get complaints on the officers, **usually those complaining were just mad about being cited.** I am not aware of any complaints prior to the time of this incident regarding physical or sexual abuse by any officer or court security officer other than those in this case. We did not become aware of these allegations until the office was contacted by a news reporter. Mickey took immediate action upon receiving the report".

*See* R. 143-4, Frazier Affidavit, ID# 2047-2048. The complaint policy at R. 140-1 **specifically excludes complaints regarding the validity of traffic citations or parking tickets**. *See* Exhibit 2, R. 140-1 policy, ID#1899. As noted above, someone being mad about being cited was the usual complaint that Stines would talk with members of the public concerning – and it was rare to receive complaints. Lashawna Frazier has been employed by the sheriff's office for over 20 years and had no knowledge prior to the instant complaint of any physical or sexual abuse by any officer or court security officer. R. 143-4, Frazier Affidavit. Former Sheriff Stines testified that he would always consult with the county attorney on disciplinary matters and that if someone complained about misconduct (as opposed to complaint about being cited) he would put it in writing as advised by the county attorney to do. R. 135, Stines, p. 98 and 103-104. As explained in reply, upon first notice of the allegations Stines took immediate action to contact the county attorney, commonwealth attorney and KSP. R.143, Reply, p. 7 and 9, Page ID#2027 and 2029.

**At page 30** the Court addresses required *annual* training, however, as addressed above as a *court security officer* Fields was required to have *bi-annual* training and was not required to

complete the more detailed annual trainings required of *law enforcement officers / deputy sheriffs*. *See* R. 143-4, Frazier Affidavit, ID# 2047-2047; R. 143-5, 503 KAR 1:190 - Certified Court Security Officers training academy; R. 143-21, transcript and R. 143-23, Payne Affidavit.

**At page 31** the Court states that Stines chose to eschew all specific local training, relevant to this case, for his deputies. Under Kentucky law it is the Department of Criminal Justice Training (DOCJT) who is charged with establishing and coordinating training programs and schools for law enforcement personnel. *See i.e*. KRS 15A.070(1)(a); KRS 15.3971 and KRS 15.3975. *See* also Exhibit 3, KRS 15.3975. Ben Fields met all standards as certified by the Kentucky Law Enforcement Counsel. R. 143-21, Page ID#2108-2109 and R. 143-4, Page ID#2047. As explained by former DOCJT Commissioner Alex Payne, *all* Kentucky departments from across the Commonwealth (excluding the academies named in the affidavit) rely upon DOCJT as the agency responsible for training their officers. R. 146-2, Page ID#2155 and Exhibit 4, Payne Affidavit. DOCJT acts on behalf of all departments and recruits to ensure that they are completely and adequately trained to meet the training standards set forth by the Kentucky Law Enforcement Counsel. *Id*. Ben Fields was not required to meet the heightened training standards of a POPS certified officer – he was a certified Court Security Officer and trained accordingly.

The Court comments regarding the Court Security Officer training rubric located at R. 143-5 appears misplaced as it is the **Kentucky Law Enforcement Council** who prescribes the standards to the DOCJT – not the Letcher County Sheriff's Office. *See also* KRS 15.330(1)(a) and R. 143-6, Code of Ethics, Page ID#2054 and 2057. Local policies must adhere to state laws and constitutional standards, and they are guided by model policies and professional accreditation standards provided by organizations like the Kentucky Association of Counties

(KACo). The Letcher County Sheriff's Department models their policies from KACo. R. 135, Stines deposition, p. 116, Page ID#1363.

The Court also addresses at page 32-33 the LCSO **sexual misconduct policy**, however, the purpose of this policy is a part of the training of "*law enforcement officers*" and not "*court security officers*". R. 136-5, Sexual Misconduct, ID# 1494. Under the policy the definition of "criminal sexual misconduct" is "the abuse of authority by a *law enforcement officer* for sexual purposes that violate the law". Additionally, each policy contains the following disclaimer:

> "This policy is for internal use only and does not enlarge an employee's civil liability in any way. The policy should not be construed as creating a higher duty of care, in an evidentiary sense, with respect to third party civil claims against employees. A violation of this policy, if proven, can only form the basis of a complaint by this Office for non-judicial administrative action in accordance with the laws governing employee discipline."

Here, given the extensive training provided through DOCJT, the disclaimer should act to absolve any claimed liability on the basis of the policy alone.

**At page 32** the Court addresses Chris Triplett's alleged telephone and in-person complaints made to unknown individuals on or about December 15, 2021 and roughly two and a half months prior to the initiation of the instant suit and alleged retaliatory stops thereafter. R. 139-9. Defendants provided proof of various traffic violations in the weeks and months before and after for similar violations in Letcher, Perry and Floyd Counties. Mr. Triplett was stopped and cited multiple times by the Kentucky State Police and only once (December 15th) by the Letcher County Sheriff's Department. R. 143, Reply, p. 4, ID#2024 and ID#2060; *see also* R. 143-9, citations, ID# 2060-2073. As described by current Whitesburg Police Department Officer Seth Whitaker, Mr. Tripplett was stopped, warned or cited multiple times by multiple agencies for concealing his license plate. Generally, Officer Whitaker would just remind him his license

plate needed to be legible. R. 143-13, Whitaker affidavit, Page ID# 2080; *see also* R. 143-14, Norris affidavit, Page ID#2084 and R. 143-12, Stambaugh affidavit, Page ID# 2076.

**At page 34** the Court notes that Plaintiff's claims were buttressed by supportive expert Scott Hilden. In formulating his opinion, Hilden fails to acknowledge *or even mention* among other Kentucky authorities KLEC, DOCJT Certified Court Security Officer training academy, 503 KAR 1:190 training academy specifications, nor KRS 70.280 duties. R. 143, Reply, p, 11, ID# 2031 and R. 131-1, Hilden report. Further, **Mr. Hilden's report fails to distinguish between training requirements for certified court security officers as opposed to law enforcement officers / deputy sheriffs.** In fact, Mr. Hilden's report does not even mention court security officers. Recently the Kentucky Supreme Court held that the law neither requires that officers adhere to "best practices" nor establishes that they must conform their actions to unadopted standards. <u>City of Paintsville v. Haney</u>, 718 S.W.3d 812, 834 (Ky. 2025). As a result, Hilden's methodology is flawed and his findings are not supported by the facts, statutory law or proper training standards and any opinions regarding the alleged violations of contemporary standards or "best practices" should be irrelevant to Plaintiff's claims.

Wherefore, based upon the foregoing, Defendants respectfully request that the Court (1) reconsider that part of the Court's September 19, 2025 Opinion and Order (R. 165) which denied summary judgment in part as to Plaintiff's claims against them under § 1983 (Fourteenth Amendment) and failure to train or supervise and (2) grant summary judgment upon all claims of the Plaintiff against these Defendants.

PORTER, BANKS, BALDWIN & SHAW, PLLC
327 Main Street, P.O. Drawer 1767
Paintsville, Kentucky 41240-1767
Telephone: (606) 789-3747
Facsimile: (606) 789-9862

*/s/ Jonathan C. Shaw*
JONATHAN C. SHAW
jshaw@psbb-law.com
*Counsel for Defendants Ben Fields in his official capacity as Deputy Sheriff with the Letcher County Sheriff's Department and Billy Jones, Letcher County Sheriff*

CERTIFICATE OF SERVICE:

I hereby certify that on October 5, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system and I further certify that I mailed a true and correct copy of the foregoing to:

Ned B. Pillersdorf, Esq.
Pillersdorf, DeRossett & Lane
124 West Court Street
Prestonsburg, Kentucky 41653
pillersn@gmail.com

Joe F. Childers, Esq.
Childers & Baxter, PLLC
201 West Short Street Suite 300
Lexington, Kentucky 40507
bethany@jchilderslaw.com

Jason E. Williams, Esq.
Williams and Towe Law Group
303 S. Main Street
London, KY 40743
jason@wftlaw.com

Patty Stockham
Eastern Kentucky Corrections Services, Inc.
1319 Siloam Street
South Shore, KY 41175
pd.stockham@gmail.com

*/s/ Jonathan C. Shaw*
JONATHAN C. SHAW