*Electronically Filed*

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
PIKEVILLE DIVISION
CIVIL ACTION NO. 7:22-cv-00007-REW-EBA**

| | |
|---|---|
| **SABRINA ADKINS** | ) |
| | ) |
| **PLAINTIFF** | ) |
| **V.** | ) |
| | ) |
| **BEN FIELDS, Individually** | ) |
| **And in his Official capacity as** | ) |
| **a Deputy Sheriff with the** | ) |
| **Letcher County Sheriff's Department,** | ) |
| | ) |
| **AND** | ) |
| | ) |
| **BILLY JONES, LETCHER COUNTY** | ) |
| **SHERIFF** | ) |
| | ) |
| **DEFENDANTS** | ) |

**PLAINTIFF'S PRETRIAL MEMORANDUM**

Pursuant to the Court's Order, dated October 27, 2025 (DE 170), the Plaintiff respectfully submits her Pretrial Memorandum.

**SUCCINCT STATEMENT OF THE FACTS**

Plaintiff Sabrina Adkins ("Adkins") was incarcerated in the Letcher County Jail from April 2021 through June 2021 and then placed on home incarceration supervised by Defendant Ben Fields ("Fields"), a Letcher County court security officer and deputy sheriff who also worked for Eastern Kentucky Correctional Services, Inc. ("EKCS"). Adkins told Fields she could not afford ankle-monitoring fees and feared returning to the Letcher County Jail; Fields responded that he could "work out something," made

1

flirtatious comments, and bought her cigarettes the night of her release. At all relevant

times while acting as a monitor of home incarceration and employed by EKPC, Fields

wore his deputy sheriff uniform, drove his sheriff cruiser, and carried a gun.

At Fields' request, Adkins met him after hours in District Judge Kevin Mullins'

chambers, where Fields removed her ankle monitor, told her she would not have to pay

fees, and thereafter cycled the monitor on before court appearances and off after, over

multiple meetings between late June and December 2021. During these meetings in Judge

Mullins' chambers, physical contact escalated from forcible kissing to oral sex and

intercourse; Adkins testified she felt scared and believed compliance was her only way to

avoid jail.

In early January 2022, after Fields was unable to provide the Letcher Circuit

Judge with Adkins' location, Fields filed a false criminal complaint that resulted in

Adkins's arrest for escape. He later swore out a false complaint to cover the misconduct.

Fields later pled guilty to rape, sodomy, and perjury related to his actions with Adkins. In

his criminal plea, Fields admitted he allowed Adkins to avoid the monitor and fees in

exchange for sexual favors.

The former Letcher County Sheriff, Micky Stines, admitted in deposition

testimony that he fostered a horrible environment within the Letcher County Sheriff's

Office ("LCSO"), including sending and receiving crude and misogynistic text messages

and photos with his deputies. He also admitted that as sheriff he did not follow official

office policies and failed to properly train and supervise his deputies regarding sexual

harassment, ethics and secondary employment. Plaintiff's expert testified that this

environment allowed Fields' conduct to occur and that the failures by the sheriff were a substantial factor in causing the harm to Adkins.

**QUESTIONS OF FACT**

1.  Whether Fields's admitted  sexual conduct with Adkins was nonconsensual due to coercive factors, including exchange of favors (fee waivers and monitor removal), location and timing of the sexual acts in a judge's chambers after hours, and Adkins's fear of jail.

2.  Whether Fields's filing of a criminal complaint against Adkins in January 2022 was retaliatory and knowingly false, intended to conceal his misconduct. (ADMITTED AND WILL RESULT IN INSTRUCTION AS SUCH TO JURY)

3.  Whether LCSO, through its Sheriff as policymaker, failed to provide required training and supervision on sexual misconduct, ethics, secondary employment, and complaint processing despite policies identifying such risks as "High Risk Critical Tasks," and whether that failure was a substantial factor in causing Adkins' constitutional injury.

4.  Whether LCSO had notice, or should have had notice, of Fields' misconduct prior to Adkins's arrest, including through December 2021 reports and the Sheriff's complaint-intake practices, and whether actions or inactions thereafter enabled further harm.

5.  The nature, extent, and causation of Adkins' damages resulting from Fields' conduct and the institutional defendants' failures, including emotional harm and other compensable injuries.

6.

3

## QUESTIONS OF LAW

1. For Adkins' Fourteenth Amendment claim against Fields: application of the pretrial detainee standard and the *Hale* rebuttable presumption of non-consent to sexual conduct by an officer, and whether Fields can affirmatively show absence of coercive factors.

2. For Adkins' assault and battery claim against Fields: whether the elements are satisfied given evidence of forcible contact and coercion, and whether any consent defense fails under the circumstances.

3. For the *Monell* claim against LCSO (official-capacity Sheriff): whether the failure to train/supervise on identified high-risk tasks, coupled with policymaker knowledge and omissions, constitutes deliberate indifference and was a substantial factor in causing the constitutional violation.

## EXPECTED EVIDENTIARY OBJECTIONS

1. Hearsay and Unavailability Issues:

   a. Anticipated hearsay objections to statements attributed to courthouse or LCSO personnel and to certain third-party reports to the sheriff's office;

   b. Evidence concerning Hill's claims and timeline may draw relevance and hearsay objections, given dismissal of Hill's claims and the Court's observations about lack of admissible first-hand proof.

2. Character, Prior Acts, and Rule 403:

   a. Objections may arise to Facebook message threads among LCSO personnel containing sexual or crude content; defendants may challenge relevance or

seek exclusion under Rule 403, while Plaintiff will argue probative value on training, supervision, and institutional climate for the *Monell* claim;

b. Defendants may seek to exclude or limit evidence of Fields' guilty plea and convictions; Plaintiff will offer the plea's admissions that Fields traded fee/monitor leniency for sex and filed a false complaint as highly probative of coercion, lack of consent, and motive.

3. Policy and Training Materials; Expert Testimony:

a. LCSO policies (Sexual Misconduct Policy; Training Directive; Ethics Complaint Procedures) and evidence of the Sheriff's implementation gaps may prompt authenticity, hearsay-within-documents, and 403 objections; Plaintiff will offer for non-hearsay purposes (notice, policy content) and causation under *Monell*;

b. Plaintiff's policing practices expert (Hilden) addressing policy gaps, training failures, and causation may face Rule 702/Daubert challenges; the Court previously noted the expert's opinions as supportive of Plaintiff's *Monell* theory.

4. Complaint-Handling and Notice Proof: Evidence of December 2021 reports (including by Jennifer Hill's fiancé) to LCSO and alleged retaliatory stops may draw relevance, hearsay, and foundation objections, including identification of the recipient and policymaker notice; the Court recognized these issues in the Opinion and Order on summary judgment (DE 165, p. 29) but found triable questions favoring submission to the jury.

5.

**PENDING MOTIONS**

According to the docket report, a motion was filed by the official capacity Defendants on October 5, 2025 (DE 166), to reconsider the Opinion and Order (DE 165) on summary judgment motions entered by the Court on September 19, 2025. Plaintiff overlooked that motion and has not responded. The motion simply rehashes arguments made in the memorandum in support of the motion and in the reply and should be summarily overruled. However, if the Court desires for the Plaintiff to file a response, Plaintiff would respectfully request until December 31, 2025, within which to do so.

**STATUS OF SETTLEMENT NEGOTIATIONS**

On April 29, 2025, the parties held a federal settlement conference conducted by Magistrate Judge Edward Atkins while the motion for summary judgment was pending. No settlement was reached (DE 150). On December 5, 2025, the parties participated in private mediation. Again, no settlement was reached. There is little likelihood of settlement. Alternative dispute resolution is not feasible at this time.

Respectfully submitted,

/s/  Joe F. Childers
JOE F. CHILDERS
JOE F. CHILDERS & ASSOCIATES
The Lexington Building
201 West Short Street
Suite 300
Lexington, Kentucky 40507
Telephone: (859) 253-9824
Facsimile: (859) 347-2310
**joe@jchilderslaw.com**

**COUNSEL FOR PLAINTIFF**
**SABRINA ADKINS**

6

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2025, a copy of the foregoing was served electronically in accordance with the method established under this Court's CM/ECF Administrative Procedures and Standing Order upon all parties in the electronic filing system in this case.

/s/ Joe F. Childers
COUNSEL FOR PLAINTIFFS